UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**WILLIAM DILLON; SCOTT GRAUE; and DAVID HODGES, individually, on behalf of a class of others similarly situated**

        Plaintiffs,

    v.

**CLACKAMAS COUNTY and CRAIG ROBERTS, both individually and in his official capacity as Sheriff,**

        Defendants.

Case No. 3:14-cv-00820 -ST

**FINDINGS AND RECOMMENDATIONS**

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiffs, William Dillon ("Dillon"), Scott Graue ("Graue"), and David Hodges ("Hodges"), filed this action on May 18, 2014, against Clackamas County and its Sheriff, Craig Roberts ("Roberts"). Plaintiffs allege violations of the Fourth and Eighth Amendments to the United States Constitution and Article I, Section 9 of the Oregon Constitution for strip and visual cavity searches conducted on inmates at the Clackamas County Jail ("CCJ"). Plaintiffs allege that suspicionless group and public strip searches have been conducted in the hallways and open

1 – FINDINGS AND RECOMMENDATIONS

areas of the CCJ for at least two years preceding the filing of this case. Additionally, they allege that on October 10, 2012, some 160 inmates were searched in a mass public strip search. Plaintiffs seek compensatory damages on both an individual and classwide basis, as well as punitive damages against Sheriff Roberts. Plaintiffs also seek a judgment declaring unconstitutional Clackamas County's policy and practice of strip and visual cavity searching inmates without individualized suspicion, and a preliminary and permanent injunction enjoining Clackamas County and Sheriff Roberts from continuing to implement the strip and visual cavity searches.

Plaintiffs allege violations of the Fourth and Eighth Amendments and seek redress under 42 USC § 1983. Accordingly, this court has jurisdiction over their claim[1] pursuant to 28 USC §§ 1331 and 1343. *Desyllas v. Bernstine*, 351 F3d 934, 936 (9th Cir 2003).

Defendants have filed a Motion to Dismiss (docket #9), requesting both dismissal of the Amended Complaint (docket #7), as well as the imposition of attorney fees and sanctions. After filing a response to that motion, plaintiffs filed a Motion for Leave to File Second Amended Complaint (docket #19). At the hearing on the motions, defendants declined the court's suggestion to stipulate to the filing of the Second Amended Complaint and to construe their pending Motion to Dismiss construed as directed towards the proposed Second Amended Complaint (docket #19-1). As discussed below, defendants' motion should be granted in part and denied in part with leave granted to plaintiffs to file an amended complaint.

///

---

[1] Plaintiffs purport to allege three distinct Causes of Action: (1) violation of 42 USC § 1983 (First Cause of Action); (2) a "Demand for Declaratory Judgment" (Second Cause of Action); and (3) a "Demand for Preliminary and Permanent Injunction" (Third Cause of Action). Only the first of these presents a separate cause of action, while the other two simply request particular forms of relief that may be available if plaintiffs prevail on their claim for constitutional violations under § 1983. *See McVey v. McVey*, 2014 WL 2782235, at **8, 12 n44 (CD Cal June 16, 2014) (citations omitted) ( "Neither the Declaratory Judgment Act nor Rule 65 [concerning applications for injunctive relief] provides an independent basis for the exercise of jurisdiction. . . ."). Similarly, in a separately stated section, plaintiffs demand punitive damages (Amended Complaint, ¶¶ 60-61), a demand which is duplicated in the Prayer (*id*, Prayer, ¶ C).

2 – FINDINGS AND RECOMMENDATIONS

Although a motion to amend is not dispositive, it is included in these Findings and Recommendations in order to track together with defendants' motion. As discussed below, that motion should be granted in order for plaintiffs to file an amended complaint that complies with this court's rulings.

## FINDINGS

### I. Motion to Dismiss

#### A. Scrivener's Errors

As a preliminary matter, defendants challenge plaintiffs' Amended Complaint as: (1) being a "cut and paste" document culled from two prior pleadings, one currently pending before this court (*Cunningham v. Multnomah Cnty., et al.*, Case No. 3:12-cv-01718-ST), and one filed more than a decade ago in the Northern District of New York (*Kahler. v. Cnty. of Rensselaer, et al.*, Case No. 1:03-cv-01324-TJM-DRH); (2) setting forth as one basis for jurisdiction an inapplicable statute, 28 USC § 1341; (3) failing to identify a particular written policy or procedure as a basis for their claims; and (4) failing to obtain documents related to the strip searches prior to filing suit. These challenges are without merit.

It is irrelevant if allegations are "cut and paste" from another document as long as the allegations are properly alleged in this case. Plaintiffs conceded that the Amended Complaint contains scrivener's errors. However, the inclusion of terms from another lawsuit against Multnomah County referencing MCIJ (Multnomah County Inverness Jail) (Amended Complaint, ¶ 18) and "kitchen duty" (*id*, ¶ 16) can easily be corrected with an amended pleading, as in plaintiffs' proposed Second Amended Complaint.

Similarly, the inadvertent inclusion of superfluous or irrelevant statutory cites does not oust this court of its jurisdiction. As noted above, this court clearly has jurisdiction over

plaintiffs' § 1983 claim under both 28 USC §§ 1331 and 1343.  The inclusion of 28 USC § 2201 (providing for declaratory relief but not independently providing a jurisdictional basis) and 28 USC § 1341 (provision prohibiting district courts from restraining the assessment, levy, or collection of taxes) in plaintiffs' jurisdictional statement (Amended Complaint, ¶ 1) does nothing to undermine this court's authority to preside over this case.  In fact, plaintiffs' proposed Second Amended Complaint deletes the reference to 29 USC § 1341.

Finally, plaintiffs need not at this juncture have identified the particular written policy or procedure on which their claims are based or obtained copies of defendants' documents related to the particular searches.  Instead, their pleadings are based on plaintiffs' own experiences in being strip-searched in public areas of the CCJ and, in particular, on their experiences in a mass strip search of some 160 inmates on October 10, 2012.  Plaintiffs are entitled to plead their case based on a short and plain statement of the conduct which they contend entitles them to relief and to flesh out the rest of the story through discovery.

### B. Sufficiency of the Pleadings

Citing *Pena v. Gardner*, 976 F2d 469 (9th Cir 1992), defendants nevertheless contend that plaintiffs' pleadings consist of only generalized and vague allegations and are, therefore, subject to dismissal.  In *Pena*, the Ninth Circuit found that the district court had "augmented Pena's complaint with facts presented in [another] case [which] involved the same search policy, the same penitentiary, and some of the same defendants" and that – in doing so – the district court had "supplied 'essential elements . . . that were not initially pled.'"  *Id* at 471-72 (internal citations and footnote omitted).  The court dismissed Pena's complaint with leave to amend, instructing Pena that to survive a motion to dismiss, he must "allege with greater specificity the particular conduct he contends cause a violation of his civil rights under . . . § 1983."  *Id* at 474.

No such deficiency appears in plaintiffs' pleadings in this case. Plaintiffs seek to represent a class of those inmates strip-searched in group and public settings. Amended Complaint, ¶ 7 (Class One). They also specifically allege that a mass public strip search took place on October 10, 2012, when "several dozen inmates up to 160 or more were pulled out of their cells in pairs by deputies in camouflage commando gear and publicly strip searched." *Id*, Introduction. Based on that allegation, plaintiffs also seek to represent a class of inmates who were included in that mass strip search. *Id*, ¶ 7 (Class Two). Unlike the pleadings in *Pena*, the pleadings in this case leave no doubt as to the particular conduct plaintiffs contend caused the violation of their civil rights. Whether the searches complained of were pursuant to a written or *de facto* policy, exactly how many searches were directed against a particular inmate, and exactly where those searches took place are issues that may be fleshed out in discovery. Defendants have identified no essential element missing from plaintiffs' pleadings and dismissal on this basis is not warranted.

C.  **§ 1983 Claim**

Defendants raise a number of challenges to plaintiffs' § 1983 claim. However, several of those challenges are based on an erroneous reading of the pleadings or the clarifications provided by plaintiffs in response to defendants' motion.

1. **ABA Standards and Oregon Administrative Rules**

First, plaintiffs allege that Clackamas County's policy, custom, or practice of conducting group strip searches of inmates is a "violation" of both ABA Standard 23-7.9 and OAR 291-041-0020. Amended Complaint, ¶ 29. Defendants characterize this allegation as some attempt to erroneously equate the ABA Standard and Oregon Administrative Rule to "specific federal rights" which, if violated, could form the basis of a claim under § 1983. However, nowhere in

the pleadings do plaintiffs contend that they have an independent § 1983 claim premised upon the failure to comply with either the ABA Standard or the Oregon Administrative Rule cited. Any confusion to the contrary is clarified in plaintiffs' response to defendants' motion. Plaintiffs include the ABA and Oregon Administrative Rule as examples of minimal penal standards and codes of conduct to highlight what they perceive to be blatant constitutional deficiencies in defendants' policies, customs, and practices. Dismissal premised upon plaintiffs' allegation citing these provisions is not warranted.

### 2. Oregon Constitution

Defendants also devote considerable time to establishing that a violation of the Oregon Constitution does not provide plaintiffs any traction. Plaintiffs allege that this case is intended to redress violations of the United States Constitution "and the Oregon Constitution, Article I, Sec. 9 – Unreasonable Search and Seizure and Sec. 16 – Cruel and Unusual Punishment." *Id*. However, that allegation is not incorporated by reference into the First Cause of Action. *Id*, ¶ 42 (incorporating only ¶¶ 1-41).[2]

Plaintiffs respond that they intend to plead an independent claim for violation of the Oregon Constitution and alternative state law tort claims under the Oregon Tort Claims Act ("OTCA"), ORS 30. 275, which are not barred by the Prison Litigation Reform Act ("PLRA"), 42 USC § 1997e(a). As discussed below, the PLRA affects a plaintiff's need to exhaust administrative remedies and the available remedy.

To state a § 1983 claim, a plaintiff must allege facts showing the deprivation of a right, privilege, or immunity secured by the federal Constitution or federal law by a person acting under color of state law. *L.W. v. Grubbs*, 974 F2d 119, 120 (9th Cir 1992). A violation of a state

---

[2] Paragraph 52 of the proposed Second Amended Complaint adds a reference the Oregon Constitution in the § 1983 claim.

6 – FINDINGS AND RECOMMENDATIONS

Constitution or state law does not support a § 1983 claim.  Moreover, a plaintiff has no implied or express private right of action for damages against a defendant for violation of the Oregon Constitution.  *Hunter v. City of Eugene*, 309 Or 298, 787 P2d 881 (1990).  Instead, a plaintiff is limited to common law, equitable, and statutory remedies.  *Juran v. Independence Or. Cent. Sch. Dist. 13J*, 898 F Supp 728, 730 (D Or 1995) ("the appropriate remedy for constitutional violations by public bodies, officers, employees and agents is the Oregon Tort Claims Act.")

In Oregon, a plaintiff may pursue common law tort claims against public bodies and employees under the OTCA, but must first timely file a tort claim notice.  The plaintiff bears the burden of establishing that the requisite notice was given, ORS 30.275(7), and "[t]he requirement that notice be given timely is a substantive condition precedent to recovery under the Oregon Tort Claims Act that, if not satisfied, deprives a plaintiff of the right to make a claim."  *Tyree v. Tyree*, 116 Or App 317, 320, 840 P2d 1378, 1379 (1992).  Although plaintiffs only allege that Graue "timely issued" a tort claim notice on January 21, 2013 (*id*, ¶ 31),[3] they disclosed at the hearing that Hodges also filed a tort claim notice alleging the common law torts of invasion of privacy and private matters made public.

Even if all plaintiffs intend to allege tort claims, they have not done so in the Amended Complaint.  The Amended Complaint contains no allegation by plaintiffs seeking relief for any tortious acts by defendants that violate Oregon law.  Assuming that they are subject to and have complied with the provisions of the OTCA, they conceivably could allege additional tort claims.  However, they also must allege that this court has supplemental jurisdiction over such claims, which they have not done.

Therefore, any claim for violation of the Oregon Constitution should be dismissed with prejudice, but plaintiffs should be allowed leave to amend to add common law tort claims.

---

[3] In their Response, plaintiffs state that Graue's notice referenced at least 20 other inmates.

7 – FINDINGS AND RECOMMENDATIONS

### 3. **Fourth and Eighth Amendments**

Plaintiffs allege that defendants violated both the Fourth Amendment for "conducting strip searches of individuals absent some particularized suspicion and in a group and in a public and demeaning fashion" and the Eighth Amendment for "performing strip searches in an unreasonable fashion on inmates." Amended Complaint, ¶¶ 52-53. Searches of pretrial detainees in jail must be reasonable within the meaning of the Fourth Amendment. *Bell v. Wolfish*, 441 US 520, 558 (1979). The Eighth Amendment bar to "cruel and unusual punishment" applies only to convicted prisoners. *Ingraham v. Wright*, 430 US 651, 671-72 n40 (1977). Because pretrial detainees are "not convicted prisoners" and have no rights under the Eighth Amendment, their right to avoid "cruel and unusual punishment" arises under the due process clause of the Fourteenth Amendment. *Frost v. Agnos*, 152 F3d 1124, 1128 (9th Cir 1998) (applying Eighth Amendment standards to evaluate pretrial detainees' Fourteenth Amendment claims); *Carnell v. Grimmm*, 74 F3d 977, 979 (9th Cir 1996), citing *Revere v. Mass. Gen. Hosp.*, 463 US 239, 244 (1983). Thus, to the extent that any plaintiffs were detainees, not convicted prisoners, who were allegedly subjected to "cruel and unusual punishments" based on unreasonable strip searches, their claim properly arises under the due process clause of the Fourteenth Amendment.

Although the Fourth and Eighth Amendments bar unreasonable strip searches to detainees and inmates, respectively, defendants argue that they do not apply to states or local governments. Instead, they assert that violations of the Fourth and Eighth Amendments are only enforceable against the states and local governments through the due process clause of the Fourteenth Amendment.

Defendants are correct that the Fourth and Eighth Amendments apply to state actors by means of the substantive due process clause of the Fourteenth Amendment. *See Wolf v. Colorado*, 338 US 25, 27-28 (1949), *overruled on other grounds by Mapp v. Ohio*, 367 US 643 (1961); *Robinson v. California*, 370 US 660, 667 (1962) (incorporating Eighth Amendment into the due process clause of the Fourteenth Amendment). However, the same standards for unreasonable searches apply under the Fourteenth Amendment as under the Fourth and Eighth Amendments. *E.g., County of Sacramento v. Lewis,* 523 US 833, 842 (1998) (when "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process [under the Fourteenth Amendment], must be the guide for analyzing these claims") (citation and internal quotation marks omitted); *Graham v. Connor*, 490 US 386, 388 (1989) (unreasonable search claim is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a [Fourteenth Amendment] substantive due process standard.").

In fact, claims for strip searches have been repeatedly allowed against local governmental entities and their employees based on the Fourth or Eighth Amendments either when considered in conjunction with or recharacterized as a Fourteenth Amendment claim. *See, e.g.*, *Hudson v. Palmer*, 468 US 517, 530 (1984) (searches intended to harass may violate the Eighth Amendment); *Byrd v. Maricopa County Sheriff's Dept.*, 629 F3d 1135 (9th Cir 2011) (cross-gender strip search of male pretrial detainee violated the Fourth Amendment, noting that the district court "properly recharacterized the claim as a substantive due process claim under the Fourteenth Amendment"); *Bull v. City & Cnty. of San Francisco*, 595 F3d 964, 969 (9th Cir

9 – FINDINGS AND RECOMMENDATIONS

2010) (defendants entitled to qualified immunity that strip search policy violated arrestees' Fourth Amendment and Fourteenth Amendment due process and privacy rights).

Moreover, the Amended Complaint is not completely devoid of any reference to the Fourteenth Amendment. Paragraph 18 specifically references both the Fourth and Fourteenth Amendments in the common questions of law and fact.[4] Even though plaintiffs have not expressly alleged a violation of the Fourth and Eighth Amendments through the due process clause of the Fourteenth Amendment in their § 1983 claim, defendants are clearly subject to liability for unreasonable strip searches and, thus, are not entitled to dismissal on that basis. However, plaintiffs should specifically connect the appropriate constitutional violation to the appropriate plaintiffs and class members, as either detainees or convicted inmates, in any amended pleading.

### 4. PLRA

As previously noted, only convicted inmates may allege a violation of the Eighth Amendment. Accordingly, defendants argue that plaintiffs' Eighth Amendment claim is subject to dismissal for failure to exhaust administrative remedies as required by the "PLRA.

However, except in the "rare cases" where a failure to exhaust is evident on the face of the pleadings, exhaustion of remedies under the PLRA is an affirmative defense that defendant must plead and prove. *Albino v. Baca*, 747 F3d 1162, 1168 (9th Cir 2014), *cert. denied*, No. 14-82, 2014 WL 3702544 (USSC Oct. 20, 2014), citing *Jones v. Bock*, 549 US 199 (2007). Moreover, the proper vehicle for raising such a challenge is a motion for summary judgment under FRCP 56, not an unenumerated motion under FRCP 12(b). *Id* at 1169. The record in this case reveals nothing about the availability of administrative remedies that might have provided a

---

[4] Paragraph 19 of the proposed Second Amended Complaint retains this same reference to the Fourteenth Amendment.

means for redress of the constitutional violations alleged by plaintiffs.  Accordingly, this portion of defendants' motion is, at best, premature and must await summary judgment proceedings, consistent with the Ninth Circuit's guidance in *Albino*.

Defendants also note that plaintiffs' alleged injuries consist exclusively of "psychological pain, humiliation, suffering and mental anguish."  Amended Complaint, ¶¶ 30, 34, 41.  However, the PLRA bars any claim "by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 USC § 1997e(e).  The "physical injury" must be more than *de minimis.  Oliver v. Keller*, 289 F3d 623, 629 (9th Cir 2002).  Therefore, defendants seek dismissal of plaintiffs' claims on the basis that all incarcerated plaintiffs and class members cannot obtain compensatory damages solely for mental or emotional injury.

However, there is no bar to claims for compensatory damages without a physical injury for those plaintiffs and class members who are no longer incarcerated.  None of the allegations in the Amended Complaint indicate whether all the named plaintiffs or potential class members are currently incarcerated.  To the contrary, the class definition includes those "who have been" subjected to unreasonable strip searches, implying that the class includes members who are no longer incarcerated.[5]  Furthermore, a plaintiff in a § 1983 action need not prove actual harm to recover damages.  "If the jury finds a constitutional violation, an award of nominal damages is mandatory, not permissive."  *Floyd v. Laws*, 929 F2d 1390, 1402 (9th Cir 1991); *see also Oliver*, 289 F3d at 630 (nominal damages not barred by the PLRA).  Thus, even if currently incarcerated class members cannot recover damages for mental or emotional injury under the PLRA, they are still entitled to recover a nominal $1.00 damage award as a symbolic vindication of their

---

[5] In their Response, plaintiffs state that Dillon is no longer in custody and not subject to the exhaustion requirement of the PLRA.

11 – FINDINGS AND RECOMMENDATIONS

constitutional right.  Therefore, dismissal is not warranted simply because some potential class members are barred by the PLRA from recovering compensatory damages over and above nominal damages.

### 5. Class Definitions

The Amended Complaint recites the membership of each class as "[a]ll persons who have been or will be placed into the custody of the CCJ regardless of charges, while unclothed in a group and public setting in open areas involving one or more deputy."  Amended Complaint, ¶ 7. The class period extends "to the date on which Clackamas County is enjoined." *Id.*  Defendants object to any attempt to assert claims for compensatory damages on behalf of any class members who have not yet been incarcerated for injuries that have not yet occurred.  However, plaintiffs clarified in their response that they only seek to represent current and former CCJ inmates who were subjected to strip searches while at CCJ.  With this clarification, dismissal is not warranted.

The Amended Complaint also seeks injunctive relief, yet fails to allege that any of the named plaintiffs are still incarcerated at CCJ.  Thus, defendants contest that they have standing to represent the proposed class. *See Arreola v. Godinez*, 546 F3d 788, 795 (7th Cir 2008). However, this issue is not one of standing because all plaintiffs allege to have suffered damages as a result of the strip searches.  Instead, it should be addressed with respect to adequate class representation when plaintiffs seek class certification.

### 6. Punitive Damages

Noting less than clear allegations, defendants also seek dismissal of any claim for punitive damages against Clackamas County. *City of Newport v. Fact Concerts, Inc.*, 453 US 247, 271 (1981).  However, as clarified both by plaintiffs' response and their proposed Second

Amended Complaint, punitive damages are sought only against Sherriff Roberts in his individual capacity.

### D. Attorney's Fees and Sanctions

Finally, defendants contend that this court should award attorney's fees and impose sanctions against plaintiffs. Defendants rely on 42 USC § 1988(b) which allows an award to the prevailing party of "a reasonable attorney's fee as part of the costs." A review of the record reveals no basis for an award of attorney's fees. Defendants are not the "prevailing party," except insofar as they have pointed out a few minor scrivener's errors that are easily corrected. Furthermore, even were they prevailing parties, "defendants prevailing in civil rights actions are to be awarded attorney's fees . . . not simply because they succeed, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." *Roberts v. Spalding*, 783 F2d 867, 874 (9th Cir 1986) (internal quotation marks, citations, and alterations omitted). Defendants' contentions wholly fail to meet that standard. The vast majority of defendants' contentions in their motion serve only to correct issues that could have been dealt with had defendants bothered to confer as required under the letter and spirit of Local Rule 17-1(a).

Defendants' request for attorney's fees under 28 USC § 1927 fares no better. That provision allows a court to impose attorney's fees against an opposing counsel who "multiplies the proceedings in any case unreasonably and vexatiously." Spurred on by the scrivener's errors identified above, defendants contend that opposing counsel has committed the supreme crime of "recklessly cutting and pasting," failed to make "any attempt to determine what written policies are in place at the Clackamas County Jail that govern strip searches," and engaged in pleading writing with unwarranted "rhetorical flourish." Defendants' Memorandum in Support of Motion to Dismiss (docket #9), pp. 32-33. Again, this court is not convinced that the oversights in

plaintiffs' pleadings – none of which prejudice defendants and all of which might have been corrected with the conferral envisioned by Local Rule 7-1(a) – merit the kind of no-holds-barred slam down that defendants apparently hope for.

Defendants also make passing references to FRCP 11(b) and assert that plaintiffs' counsel should be subject to sanctions in signing and filing the Amended Complaint. However, the safe harbor provision of FRCP 11(c)(1)(A)(a) is mandatory. *See, e.g.*, *Elliott v Tilton*, 64 F3d 213, 216 (5th Cir 1995). Defendants do not purport to have complied with that safe harbor provision before seeking sanctions.

Thus, defendants' request for attorney's fees and sanctions should be summarily denied.

## II. Motion to Amend

Pursuant to FRCP 15(a), plaintiffs seek leave to file a proposed Second Amended Complaint which corrects minor typographical and grammatical errors, adds two new plaintiffs and proposed class representatives (Albert Love ("Love") and Jayson Saylor "(Saylor"), clarifies the proposed subclasses and addresses concerns raised by defendants as to the sufficiency of the Amended Complaint. Despite its correction of many of the deficiencies noted by defendants' motion to dismiss, defendants assert that this third iteration is not much better than the prior two complaints and still is a paradigm of bad faith.

Plaintiffs are correct that their proposed Second Amended Complaint cures the minor, non-substantive typographical and grammatical errors, including the references to "MCIJ," "kitchen duty," and "28 USC 1341," and more clearly defines the proposed subclasses. It also clarifies in paragraph 69 that plaintiffs only seek punitive damages against Sheriff Roberts in his individual capacity.

However, it does not make other necessary substantive changes. For example, it retains the reference to the Oregon Constitution in the Introduction and adds it to the § 1983 claim (proposed Second Amended Complaint, ¶ 52). It does not expressly specify which constitutional amendment applies to which plaintiffs and potential class members (detainees as opposed to convicted inmates) and does not include the Fourteenth Amendment as the basis for claiming violations of the Fourth and Eighth Amendments as applied to local governmental entities and employees. It does not allege any state tort claims, even though it continues to reference the tort claim notice filed by Graue. *Id*, ¶ 31. It also continues to allege separate causes of action for a declaratory judgment and an injunction, even though these are remedies for constitutional violations under § 1983, not separate causes of action.

Defendants also object to the addition of the two new plaintiffs, Love and Saylor. According to paragraph 4 added to the proposed Second Amended Complaint, Dillon, Saylor, and Love "are out of custody," while Graue and Hodges "are currently in custody." According to defendants, however, none of the five plaintiffs "is currently in the custody of the [CCJ]." Eby Decl. (docket #23), ¶ 4. At the hearing, plaintiffs clarified that when they filed the initial complaint, Graue and Hodges were not in custody in CCJ, but were in custody somewhere in the state system. They assert that being in custody for purposes of the PLRA includes not only CCJ, but any prison facility. In any event, the PLRA only affects what damages are recoverable and what administrative exhaustion is required, both of which are premature issues for a motion to dismiss. However, at least one of the named plaintiffs must be in custody in CCJ to be an adequate class representative for injunctive relief. Plaintiffs can easily clarify the custody status of each named plaintiff in an amended pleading.

15 – FINDINGS AND RECOMMENDATIONS

This court strongly disagrees with defendants that plaintiffs should not be given another opportunity to replead their case.  It is far from clear that defendants complied with the meet and confer standards of LR 7-1(a)(1)(A) before filing their motion to dismiss the Amended Complaint which could have avoided many of the minor issues.  More importantly, plaintiffs have sufficiently pled claims for constitutional violations, but simply need to rework them slightly to address all of the identified problems.  A further amendment is not futile.

Therefore, plaintiffs should be granted leave to file an amended complaint, but not the proposed Second Amended Complaint attached as Exhibit A (docket #19-1) to the motion.  Instead, plaintiffs should be ordered to file an amended complaint which complies with the court's rulings on defendants' Motion to Dismiss.

## RECOMMENDATIONS

For the reasons stated above, defendants' Motion to Dismiss (docket #9) should be GRANTED in part and DENIED in part, with leave granted to plaintiffs to file an amended complaint.  In addition, plaintiffs' Motion for Leave to File Second Amended Complaint (docket #19) should be GRANTED, but plaintiffs should be ordered to file an amended complaint which complies with the court's rulings on defendants' Motion to Dismiss.[6]

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Monday, November 10, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

---

[6] A ruling or recommendation on a non-dispositive pre-trial motion may be reconsidered only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 USC 636 (b)(1)(A).

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED  October 23, 2014.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

17 – FINDINGS AND RECOMMENDATIONS